UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD J. KIMBALL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 06-71-P-S |
| | ) | |
| DEPARTMENT OF HUMAN SERVICES, | ) | |
| | ) | |
| Defendant | ) | |

*Recommend Decision on Motion to Dismiss*

Richard Kimball has filed suit against the Maine Department of Human Services complaining about the department's calculation of his past and present child support obligations and its deductions from his Social Security disability check. Kimball charges the Department of Health and Human Services (DHHS) with malpractice. DHHS has filed a motion to dismiss. (Docket No. 7.) I recommend that the Court grant the motion to dismiss because the complaint fails to state a claim for which this court can grant relief.

*Discussion*

*Complaint Allegations*

In his complaint Kimball lists eleven issues under his "Complaint of Malpractice":

1) Poverty Issues
2) Debt Issues
3) No Lawyer or Social Worker
4) Medical Issues
5) Life Issues (in gen'l)

6)  Legal Issues
7)  DHHS-CSE Practices
8)  Social Security
9)  Statement and Calculations
10) Discrimination – Constitutional Rights
11) Civil Rights.

(Compl. at 2.)[1]

In his textual explanation of his complaint Kimball indicates that he has been ordered by a court to pay twenty dollars a week of child support for his daughter who was born January 19, 1980.  (Compl. at 3.)  He states that his income over the years has been at or below the poverty level.  (Id.)  He also has a son born on September 1, 1992, for whom he pays support. (Id.)  Kimball went to an administrative hearing in 1995 on his son's case.  (Id.)  The incomes that DHHS used at that hearing were not the true incomes, Kimball contends.  (Id.) Furthermore, DHHS did not give Kimball the rights and responsibility booklet at the hearings and there was no information relayed to Kimball about what that booklet contained concerning the ten-percent rule, work related expenses, and cost of living.  (Id.)   In 2002 Kimball went to family court and was given this booklet (after not having it for six years).  (Id.)  Kimball then raised the ten-percent rule with the Case Management Officer.  (Id.)  This officer apparently reviewed the figures that Kimball was paying and (apparently as a consequence of this review) it is now unclear to Kimball whether he was charged $32 or $13 a month in child support over a twenty-one month period.  (Id.)

Kimball also refers to paperwork that he sent for from Florida in or concerning 1995 and negotiations he apparently had with "S.Gray," with whom Kimball arrived at an

---

[1]      The complaint page references are to the page number as they appear on the PDF document entered at Docket No. 1.  Kimball has hand-numbered the four explanatory pages of his complaint 1 through 4, which will be referenced here as 3-6.

oral "deal" as to what Kimball's payments would be after his daughter turned eighteen in 1997. (Id. at 4.)  Nevertheless, in 2002 apparently DHHS required Kimball to pay on back arrearages in contravention to the S. Gray deal.  Kimball believes he has figures that prove that he was overcharged.  (Id.)

Apparently turning to disability related concerns and deductions by DHHS from his disability payments, Kimball states that he broke his arm, leg, and jaw in a 1981 car accident. (Id. at 5.)  He has a steel plate in his arm and leg, a screw in his hip, and wires in his jaw.  (Id.)  In 1986 Kimball fell on staging and was out of work for eight or nine months. (Id.)  And he was told that he had "R.T.S.D." in 1991, a condition attributed to Kimball's history of childhood physical abuse.  (Id.)  Concerning his disability he has at least six different figures that DHHS has sent to him which he finds hard to understand. (Id.)  He has appealed some of the DHHS determinations without success.  (Id.) Just last month, Kimball complains, he had to sign nine compliance forms to get his [driver's?] license back.  (Id.)  DHHS has been taking $131.40 out of his disability since October 5 and Kimball does not understand how DHHS can say that he has not been paying for the last five months when he has been making payments, as demonstrated by his SSI printout. (Id.) And in 1994 DHHS represents that Kimball made $9800 when in fact he made $3200.  (Id.)  Kimball finds it hard to protect his interests when "a lot of smoke is blown" in his face.  (Id.)

He concludes:  "I[] wish[] the court could help me.  I signed both b[ir]th certificates.  I've pa[i]d at least 27 thousand[] dollars in child support.  I'd like to ask

DHHS about some of these things [] but they say you can't go back or nothing at all."
(Id. at 6.)[2]

### *Motion to Dismiss Pleadings*

DHHS has filed a motion to dismiss, pressing three discreet arguments for dismissal:  insufficiency of service of process; a lack of subject matter jurisdiction over the claim; and a failure to state a claim for which relief can be granted.  (Mot. Dismiss at 2-5.)

In responding to the motion to dismiss Kimball continues to refer to his cause of action as one for "malpractice."  (See Resp. Mot. Dismiss at 2, Lines 4, 6 & 23; id. at 4, Line 6 & 20; id. at 6, Line 6.)  The malpractice of which he complains is his perception that DHHS is not handling its accounting of his obligations correctly, failing to consider his living expenses and the Federal Poverty Guidelines, and communicating and calculating in an inaccurate manner.  (Id. at 7-8.)   In his response to the motion to dismiss Kimball defends the proposition that he can use this federal cause of action as a way of getting an accounting from DHHS and maintains that this court could/should take oversight of his grievance with DHHS and investigate and review his DHHS case (id. at 4; see also id. at 5).  Rather than rule on the motion to dismiss, Kimball wants the court to put the motion to dismiss under advisement while he pursues discovery (id. at 6) and to set out a procedural scheduling order (id. at 7).  While Kimball mentions "due process"

---

[2]      Kimball filed a supplemental pleading three days after filing his complaint.  This pleading corrects some date concerns; asks DHHS for various accountings and explanations; indicates that Kimball contacted certain law makers and their staff members; represents that a lawyer wanted $1800 to look at his paperwork; complains about the attitude of support enforcement workers; criticizes DHHS for sending out – without a date -- a notification in 2004 that he can seek a review of child -support obligations if he has not had a review in three years and there has been a substantial change in income; and protests that DHHS makes logistical mistakes in the conduct of the hearings, some that cost him time at work.  Incorporating these as complaint allegations would not change the complexion of Kimball's case for purposes of this motion to dismiss.

(id. at 5) and equal protection (id. at 7), it is clear from the context of these terms that he

is referring to his desire to get process and equal protection in this federal action as

opposed to claiming that his rights to due process and equal protection were violated by

DHHS.

      DHHS replies:

> Plaintiff's Opposition to the Motion to Dismiss makes it clear that
> his cause of action is either one for malpractice committed by the
> Department, or, an attempt to appeal (or set aside) past decisions made by
> DHHS and/or Maine's courts in matters involving his child support
> obligations. An action for malpractice between citizens of the same state
> does not come within this court's federal question jurisdiction.

(Reply at 1.)  DHHS also correctly points out that if Kimball is seeking to set aside prior

state court determinations of his support obligations he cannot proceed in this manner in

this court and that if he is trying to overturn decisions of DHHS his recourse is through

the appeals process set forth in Maine Rule of Civil Procedure 80C.  (Id.)

      DHHS is entitled to dismissal on the grounds that Kimball's "malpractice" action

against it for failing to properly calculate his child support obligations and disability

garnishment is not a cognizable federal claim.

### Conclusion

      For the reasons set forth above, I recommend that the Court **GRANT** the motion

to dismiss (Docket No. 7).  I have already endorsed as moot the motion for service.

### NOTICE

      A party may file objections to those specified portions of a
magistrate judge's report or proposed findings or recommended decisions
entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by
the district court is sought, together with a supporting memorandum,
within ten (10) days of being served with a copy thereof.  A responsive

memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.


/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

May 30, 2006

6